

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2008

# Minetola v. Comm Telephone Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2783

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Minetola v. Comm Telephone Co" (2008). *2008 Decisions.* Paper 307.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/307

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 07-2783

————

JOHN MINETOLA,
Appellant

v.

COMMONWEALTH TELEPHONE COMPANY;
COMMONWEALTH TELEPHONE ENTERPRISES, INC

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cv-01677)
District Judge: Honorable A. Richard Caputo

————

Submitted Under Third Circuit LAR 34.1(a)
October 27, 2008

Before: SLOVITER, GREENBERG, Circuit Judges,
and IRENAS,* Senior District Judge

(Filed October 30, 2008)

OPINION

SLOVITER, Circuit Judge.

_____

* Honorable Joseph E. Irenas, Senior United States District
Judge for the District of New Jersey, sitting by designation.

John Minetola appeals the District Court's grant of summary judgment in favor of his employer for Minetola's failure to create a genuine issue of material fact on his age discrimination claims. We will affirm.

## I.

Minetola, who was born in 1955, was employed as a sales manager, strategic accounts, with the Commonwealth Telephone Company ("CTC")[1] from May 1, 2002 until May 30, 2003. Elena Kilpatrick, Minetola's supervisor during the latter half of this period, found him to be "an average performer," although she hoped for employees "who are above average." App. at 81. She never gave Minetola a written warning, but he did require some "verbal coaching." App. at 81.

Effective June 1, 2003, Minetola was reassigned (demoted, according to him) from a manager position to CTE as senior account executive, which is essentially a sales representative. This resulted in a $10,000 pay cut, although he was paid "substantially more in base" than other representatives. App. at 110. He was replaced as sales manager at CTC by Ed Weirich, who was 33 years old. Minetola's new supervisor at CTE, Steven Letts, told him at their "first conversation" that "this was an opportunity for both of us and . . . I was expecting to see solid performance; and . . . if I didn't see it, given the fact that I was one head count over budget [taking Minetola], that I'd be left with no

---

[1] CTC is a subsidiary of Appellee Commonwealth Telephone Enterprises, Inc., t/d/b/a Commonwealth Communications ("CTE").

alternative but to put [Minetola] under a performance plan; and hopefully, he'd get healthy, but if he didn't, then I'd have to terminate him." App. at 91.

On June 18, 2003, Letts requested that Minetola provide him with a sales forecast for the remainder of 2003, and told him that "[y]ou and the others selling [a new] product will be held to this goal. . . . You have one quarter to demonstrate the value you bring to the organization. If you are not able to do this, we'll have to revisit your long term involvement" with the organization. App. at 107. Minetola's forecast of sales was considered "far too low" by Letts, as it did not reflect the $120,000 per month sales quota that Minetola and other sales representatives had. App. at 110. Letts told Minetola that he "need[ed] some solid back-up information in order to justify your livelihood" at CTE, but that "[g]iven your experience . . . , I feel confident you will find a way to be successful." App. at 111. Minetola responded that he "expect[ed] to be successful in this role." App. at 111.

Between July and November 2003, Letts and Minetola had "numerous conversations including [Letts'] suggestion that [Minetola] should begin looking for another job opportunity and to reconsider whether or not a sales role was best for him." App. at 108. Minetola generated no sales in June, August, and September 2003, and he generated sales of $2,000 in July, $6,000 in October, and $40,000 in November 2003.[2] On December 5, 2003, Letts gave Minetola a written performance improvement plan

---

[2] Minetola was relieved of his $120,000 quota for the months of June and July 2003, but Letts expected "to see production nonetheless." App. at 111.

("PIP"), which stated that his "2003 performance does not meet an acceptable level of sales production," and that he was expected to meet certain specified targets (including a sales quota for December of $672,323) by December 31, 2003, or he could receive "disciplinary action up to an[d] including termination." App. at 114. Letts explained that although he did not reasonably believe Minetola could meet the goals set for him, if he "showed me an earnest effort . . . , I as the manager had the ability to continue working with [him] under this PIP and not pull the trigger to termination." App. at 101.

For the month of December, Minetola generated sales of $128,000, which consisted of "primarily one deal." App. at 109. Despite the upward trend, Minetola's December sales and his January "sales funnel" led Letts to believe that "he would likely not close anything significant during the first quarter of 2004." App. at 109. Minetola was terminated due to poor performance effective January 31, 2004, when he was 48 years old.

After exhausting his administrative remedies, Minetola filed this action in the United States District Court for the Middle District of Pennsylvania, alleging that he was discriminated against because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951-963. The District Court granted summary judgment to CTE on counts two and three of Minetola's complaint

4

regarding his termination, the only claims on which CTE moved for summary judgment.[3]

Subsequently, Minetola filed a motion for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, which the District Court granted on June 12, 2007, staying disposition of count one of Minetola's complaint pending appeal. Minetola filed a timely appeal. There is no dispute that this court now has jurisdiction to hear the appeal.[4]

## II.

We exercise plenary review over the District Court's order granting summary judgment. We will affirm a grant of summary judgment if there are no issues of disputed material fact, and the moving party is entitled to judgment as a matter of law. Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a burden-shifting framework for discriminatory treatment cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and we have

---

[3] Count one addressed Minetola's alleged demotion due to his age. CTC did not move for summary judgment.

[4] We have jurisdiction over this appeal because the District Court made the determination required by Rule 54(b) of the Federal Rules of Civil Procedure that "there is no just cause for delay and it direct[ed] the Clerk to enter judgment." App. at 2. See Berckeley Inv. Group, Ltd. v. Colkitt, 259 F.3d 135 (3d Cir. 2001).

"applied a slightly modified version of this scheme in ADEA cases."[5] Keller v. Orix

Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). First, a plaintiff must

set forth a prima facie case of age discrimination, by alleging "that (i) the plaintiff was a

member of the protected class, i.e., was 40 years of age or older (see 29 U.S.C. § 631(a)),

(ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and

(iv) that the plaintiff was replaced by a sufficiently younger person to create an inference

of age discrimination." Id. (citation omitted). After the prima facie case has been

established, "[t]he burden of production (but not the burden of persuasion) shifts to the

defendant, who must then offer evidence that is sufficient, if believed, to support a

finding that it had a legitimate, nondiscriminatory reason for the discharge." Id. (citation

omitted). If the defendant satisfies this burden, the burden of persuasion is on the

plaintiff to submit evidence "from which a factfinder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." Id. (citations omitted).

Assuming arguendo that steps one and two of the McDonnell Douglas framework

were satisfied, the District Court found that Minetola did not offer sufficient evidence of

pretext, as the uncontroverted evidence showed that Kilpatrick, Minetola's supervisor at

---

[5] "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

CTC, was unsatisfied with his performance, which was merely "average," and that he required verbal coaching. App. at 81. Although Minetola argues that Kilpatrick failed to document such coaching in writing, as he claims is required by company policy, he does not dispute that such coaching occurred. Furthermore, there is evidence in the record that a performance review dated February 2003 "outlined areas of required personal and leadership development." App. at 129.

Moreover, with respect to the reasons for his termination, the District Court found that Minetola "failed to satisfy even his own sales forecast," and that although his figures improved for December 2003, "[i]t is not for the Court to second guess an employer's decision" regarding Minetola's termination that was based partly on Letts' prediction that Minetola would not generate significant sales in the first quarter of 2004. App. at 16. Minetola relies on a letter by Andrew Logue, Vice President of Human Resources, regarding his termination, which stated that "[a]fter a review of the materials and talking with both John Minetola and Steve Letts, I conclude that John made every effort to succeed and was provided every opportunity to succeed. The product and market did not allow that to happen." App. at 132. This statement does not evidence that Minetola was discriminated against because of his age. Minetola fails to quote the following sentence, where Logue concluded that "[t]he decision to terminate John for failure to meet his quota was fair and consistent." App. at 132. Cf. Keller, 130 F.3d at 1109 ("'The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'") (alteration in original and citation omitted).

7

Minetola also argues that he, unlike two other employees aged 45, was given less time to improve after being put on a PIP before being terminated. However, both of the employees to whom Minetola refers were only a few years younger than he was at the time and this does not provide a basis to discrimination against him. See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 307 (3d Cir. 2004) ("Leary and McKellar respectively were only three and two years younger than Monaco, a differential which does not satisfy the sufficiently younger standard [the Supreme Court] set forth."). Minetola has not come forth with any evidence that would create a genuine issue of material fact that his termination was because of his age.[6]

## III.

For the above-stated reasons, we will affirm the decision of the District Court granting summary judgment to Appellees.

---

[6] In fact, Minetola admitted in his deposition testimony that, other than the fact of his termination, there was no evidence that Appellees were prejudiced against older employees.